UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MARY GRACE DONAHUE,
    Plaintiff,

 -vs-                                                    Case No.
                                                         Hon.

JOHN C. BONEWICZ, P.C.,
JOHN C. BONEWICZ
JOHN MAHAN
NELSON VILLIETTE,
RAYMOND BENBIG,
SQUARETWO FINANCIAL COMMERCIAL
    FUNDING CORPORATION,
CACH, LLC,
    Defendants.

## COMPLAINT & JURY DEMAND

*Mary Grace Donahue states the following claims for relief:*

### Jurisdiction

1.    This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2.    This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3.    The Plaintiff to this lawsuit is Mary Grace Donahue who resides in Royal Oak, Michigan.

4.    The Defendants to this lawsuit are as follows:

    a.    John C. Bonewicz, P.C. ("Bonewicz Law") which is a law office located in Illinois

        which engages in collection conduct in Michigan.

b.     Johc C. Bonewicz, ("Mr. Bonewicz") an attorney, individual and owner of Bonewicz Law. Mr. Bonewicz is the owner and operator of Bonewicz Law and he created the collection policies and procedures used by Bonewicz Law and its employees, manages the daily collection operations of Bonewicz Law, and/or oversees and ratifies the application of the collection policies and procedures used by Bonewicz Law and its employees. Mr. Bonewicz directly and indirectly, uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Bonewicz Law, directly and indirectly regularly collects or attempts to collect, debts owed or due or asserted to be due another and was directly and/or indirectly involved in the collection of the debt from Ms. Donahue..

c.     John Mahan, a debt collector and agent for Bonewicz Law.

d.     Raymond Benbig, a debt collector and agent for the Bonewicz Law.

e.     Nelson Villiette, a debt collector and agent for the Bonewicz Law.

f.     SquareTwo Financial Commercial Funding, ("SquareTwo") dba as CACH LLC, ("CACH"), which is debt buyer and a debt collector and corporation doing business in Michigan.

g.     CACH LLC, an agent and/or affiliate of SquareTwo, which is a debt collector doing business in Michigan.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Oakland County.

6. Venue is proper in the Eastern District of Michigan.

## General Allegations

7. In 2006, Ms. Donahue took out three separate student loans from Key Bank, N.A. ("Key Bank") to finance her studies at Western Michigan University.

8. She later transferred to Wayne State University to continue her studies and took steps to defer payment on her student loans as she had not yet completed her studies and entered her professional field.

9. While still in school, she learned that Key Bank, a private lender, would not allow her to defer payment on her loans and it was demanding immediate payments on the three loans.

10. At some point, Key Bank assigned the loans to Creditors Interchange for collection.

11. In correspondence dated July 6, 2010, Creditors Interchange demanded payment of the full balance of the three loans in the in the amount of $10,364.83.

12. It also began collection calls to Ms. Donahue through its agent Ms. Hill.

13. Ms. Hill demanded payment and told Ms. Donahue on more than one occasion that they would repossess her car if she did not pay.

14. Ms. Donahue was fearful that she would lose her means of transportation but did not have the funds to immediately pay back the full balance on the loans.

15. Ms. Hill offered a full and final settlement of all the loans for payment of $7,800.00 to Key Bank. She told Ms. Donahue that upon payment, the balance on the accounts would be zero, the accounts would be closed, and collections on the accounts would cease.

16. Ms. Donahue obtained a loan from her mother who cashed in part of her retirement account.

17. Ms. Donahue sent the funds by certified bank check via FedEx overnight mail to Creditors Interchange.

18. Creditors Interchange accepted Ms. Donahue's payment of $7,800.00.

19. Ms. Hill told Ms. Donahue that she would send her a receipt with 30 days of the payment showing $7,800.00 in full and final payment of the account. She told Ms. Donahue she could send this receipt to the credit reporting agencies along with a letter to show payment in full on the accounts.

20. After the expiration of the 30 days, Ms. Donahue called Ms. Hill multiple times to inquire after the receipt.

21. Ms. Hill refused to take her call and did not return her call and never sent the promised receipt.

22. The three loans were not closed; rather, they were wrongfully transferred to various debt collectors along with false information that they were unpaid with outstanding balances in the approximate range of $360.00, $522.00 and $546.00.

23. Ms. Donahue disputed these accounts to debt collectors.

24. SquareTwo Financial currently owns the accounts.

25. The accounts were most recently assigned to Bonewicz Law for collection.

26. In February 2012, Bonewicz Law began its collection campaign against Ms. Donahue.

27. It issued its collection letters wrongfully demanding payment of the false amounts on the three accounts.

28. In those letters, Bonewicz Law falsely claimed that she had an outstanding balance on the student loans and demanded payment.

29. Bonewicz Law began telephoning Ms. Donahue demanding payment on the accounts.

30. Ms. Donahue told Bonewicz Law that she did not owe the money and that she settled the

account in full with Creditors Interchange in 2010.

31. Despite the disputed status, Bonewicz Law continued to call and demand for payment for the false amounts, in violation of 15 U.S.C. §1692e(2), e(10) f and f(1).

32. In one call, Ms. Donahue communicated her dispute to Bonewicz Law collector Raymond Benbig.

33. Despite this dispute, Collector Benbig continued to demand payment of the false amounts, in violation of 15 U.S.C. §1692e(2), e(10) f and f(1).

34. Bonewicz Law placed numerous calls to Ms. Donahue calling her repeatedly and continuously with the intent annoy, abuse or harass her in violation of 15 U.S.C. §1692d(5).

35. In May of 2012, Bonewicz Law, through its collector believed to be John Mahan, telephoned her place of employment and spoke to her manager Meghan Murphy.

36. In the call, John Mahan repeatedly and rudely demanded to speak Ms. Donahue, implied that Ms. Murphy was lying when she stated Ms. Donahue was not in the office and continued to press her for more and more information about Ms. Donahue's whereabouts.

37. When Ms. Murphy did not provide the requested information, he left his name and number for Ms. Donahue to return the call.

38. Mr. Mahan's request for a return phone call was in violation of the content restrictions of third party communications in 15 U.S.C. §1692c(b) and b which limit communications to inquiries about location information.

39. Mr. Mahan's rude manner and repeated demands were harassing, oppressive and abusive in violation of 15 U.S.C. §1692d.

40. Ms. Murphy immediately called Ms. Donahue and gave her Mahan's message.

41. Ms. Donahue was concerned and embarrassed about the message and conduct of Mr. Mahan.

42. She returned the call and reached Mr. Mahan.

43. Mr. Mahan demanded payment and falsely stated that she owed money on the three student loans, in violation of 15 U.S.C. §1692e(2), e(10) f and f(1).

44. Ms. Donahue again told Bonewicz Law that she paid off the accounts and did not owe any money on them.

45. Ms. Donahue also told Bonewicz Law to stop calling her place of employment as she was not allowed to take these kinds of calls and she was infrequently in the office.

46. In the same period that it was calling Ms. Donahue, Bonewicz Law began calling Ms. Donahue's mother, Jerilyn Donahue, seeking to collect on the loans.

47. Bonewicz Law told Jerilyn Donahue that Ms. Donahue owed money on the student loans, which claims were false and in violation of 15 U.S.C. §1692e, e(2), e(10) f and f(1).

48. In communicating information about the account to Jerilyn Donahue, Bonewicz Law disclosed private account information to a third party in violation of 15 U.S.C. §1692b(2), which prohibits communication to a third party that a consumer owes a debt.

49. Bonewicz Law placed at least a dozen phone calls to Jerilyn Donahue.

50. Bonewicz Law did not have Ms. Donahue's consent to call Jerilyn Donahue and these calls were in violation of the prohibition on communications to third parties set forth in 15 U.S.C. §1692c(b) and b.

51. Bonewicz Law placed daily calls to Jerilyn Donahue on her cell phone and at her place of employment, sometimes calling her on multiple occasions in a day, in violation of 15 U.S.C.

§1692d(5).

52. Ms. Donahue was embarrassed that Bonewicz Law told her mother that she owed money on the loans and upset, angry and frustrated that they called her so many times.

53. Bonewicz Law continued to hound Ms. Donahue for payment all through July and August of 2012, repeatedly calling her even though she repeatedly told Bonewicz Law that she did not owe the money.

54. On July 9, 2012, Bonewicz Law, through its agent Nelson Villiette, left a message on Ms. Donahue's cell phone in which he indicated that he was calling from a law office, that the matter was "urgent" and that she must call back today.

55. These statements conveyed a false sense of urgency and constitute false threats of legal action in violation of 15 U.S.C. §1692e e(5) and e(10).

56. Nelson Villiette failed to state that he was calling from Bonewicz Law and thus failed to meaningfully identify the caller in violation of 15 U.S.C. §1692d(6).

57. In a later call, Mr. Benbig called and demanded payment on the student loans.

58. When Ms. Donahue repeated her dispute that she owed nothing and that the accounts had been paid in full, rather than acknowledging her dispute, Mr. Benbig replied and they would mark it as a "refusal to pay."

59. This statement was harassing, oppressive, abusive, deceptive and misleading as Ms. Donahue's response was a continued dispute.

60. In August 2012, Bonewicz Law, through its agent John Mahan, again called for Ms. Donahue at her work number in violation of 15 U.S.C. §1692c(a)(3).

61. John Mahan spoke to Debbie Yarber and left a message for Ms. Donahue to return the call

at the Bonewicz Law number, and his extension.

62. Mr. Mahan's request for a return phone call was in violation of the content restrictions of third party communications in 15 U.S.C. §1692c(b) and b which limit communications to inquiries about location information.

63. Bonewicz Law knew Ms. Donahue was not allowed to take its calls at work and its contact there was in violation of 15 U.S.C. §1692c(a)(3).

64. The call to Ms. Donahue at her place of employment was at a place known by Bonewicz Law to be inconvenient to her and in violation of 15 U.S.C. §1692c(a)(1).

65. As a result of the acts alleged above, Plaintiff has suffered damages.

### COUNT I – Fair Debt Collection Practices Act (Bonewicz Law, Mr. Bonewicz and its Agents and Collectors )

66. Ms. Donahue incorporates the preceding allegations by reference.

67. At all relevant times Bonewicz Law, Mr. Bonewicz and its debt collectors (collectively "Bonewicz Law Defendants") – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

68. Bonewicz Law, Mr. Bonewicz and its individual debt collectors are each a a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

69. At all times relevant to this complaint, the Bonewicz Law Defendants sought to collect a "consumer" debt from Ms. Donahue.

70. The actions of the Bonewicz Law Defendants to collect this alleged debt from Ms. Donahue violated the provisions of the FDCPA including, but not limited to 15 U.S.C. §1692b, b(1), b(2), b(3), c(a)(1), c(a)(3) c(b), d, d(5), d(6), e, e(2), e(3), e(5), e(10), f and f(1).

71. Ms. Donahue has suffered damages as a result of these violations of the FDCPA.

## COUNT II – Michigan Occupational Code (Bonewicz Law and Mr. Bonewicz)

72. Ms. Donahue incorporates the preceding allegations by reference.

73. Bonewicz Law is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

74. Ms. Donahue is a debtor as that term is defined in M.C.L. § 339.901(f).

75. Bonewicz Law's and Mr. Bonewicz's foregoing acts in attempting to collect this alleged debt against Ms. Donahue constitute violations of the MOC including but not limited to, M.C.L. § 339.915(a), (e), (f),  (g), (i), (n), and (q).

76. Ms. Donahue has suffered damages as a result of these violations of the MOC

77. These violations of the MOC were willful.

## COUNT III – Michigan Collection Practices Act (Bonewicz Law and Mr. Bonewicz) as alternative to claims under the Michigan Occupational Code

78. Ms. Donahue incorporates the preceding allegations by reference.

79. Bonewicz Law and Mr. Bonewicz are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

80. The foregoing acts of Bonewicz Law and Mr. Bonewicz in attempting to collect this alleged debt against Ms. Donahue constitute violations of the Michigan Collection Practices Act, including, but are not limited to, M.C.L. § 445.252(a), (e), (f),  (g), (i), (n), and (q).

81. Ms. Donahue has suffered damages as a result of these violations of the MCPA.

82. These violations of the MCPA were willful.

### COUNT IV – Fair Debt Collection Practices Act (SquareTwo and CACH)

83. Ms. Donahue incorporates the preceding allegations by reference.

84. At all relevant times SquareTwo and CACH – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

85. SquareTwo and CACH are each a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

86. At all times relevant to this complaint, SquareTwo and CACH sought to collect a "consumer" debt from Ms. Donahue.

87. The actions of SquareTwo and CACH to collect this alleged debt from Ms. Donahue violated the provisions of the FDCPA including, but not limited to 15 U.S.C. §1692e, e(2), e(5), e(10) and f.

88. Ms. Donahue has suffered damages as a result of these violations of the FDCPA.

### COUNT V – Michigan Occupational Code (SquareTwo and CACH)

89. Ms. Donahue incorporates the preceding allegations by reference.

90. SquareTwo and CACH are each a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

91. Ms. Donahue is a debtor as that term is defined in M.C.L. § 339.901(f).

92. The foregoing acts of SquareTwo and CACH acts in attempting to collect this alleged debt against Ms. Donahue constitute violations of the MOC including but not limited M.C.L. § 339.915 (e), and (q).

93. Ms. Donahue has suffered damages as a result of these violations of the MOC

94. These violations of the MOC were willful.

### COUNT VI – Michigan Collection Practices Act (SquareTwo and CACH)as alternative to claims under the Michigan Occupational Code

95. Ms. Donahue incorporates the preceding allegations by reference.

96. SquareTwo and CACH are each a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

97. The foregoing acts by SquareTwo and CACH in attempting to collect this alleged debt against Ms. Donahue constitute violations of the Michigan Collection Practices Act,. including, but are not limited to, M.C.L. § 445.252 (e), and (q).

98. Ms. Donahue has suffered damages as a result of these violations of the MCPA.

99. These violations of the MCPA were willful.

### COUNT VII – Request for Declaratory Relief (SquareTwo, CACH and Bonewicz Law)

100. Ms. Donahue incorporates the preceding allegations by reference.

101. Ms. Donahue fully and finally paid off all three student loans in 2010.

102. Notwithstanding these facts, the accounts have been transferred to at least two other debt collectors and have been reported by SquareTwo and CACH to consumer reporting agencies.

103. It is a common industry practice within the credit industry for debt collectors and credit companies to sell or transfer accounts which cannot lawfully be enforced, thus requiring consumers like Ms. Donahue to repeatedly defend against non-judicial collection efforts and adverse credit reporting which can only be remedied after months – sometimes years – of credit disputes.

104. Consequently, consumers like Ms. Donahue may be subjected to repeated collection and credit reporting which damage her ability to obtain, credit, insurance or employment based upon a fraudulent account.

105. In the current economic environment, job and credit opportunities are scarce and cannot be easily replaced.

106. Ms. Donahue has no way of knowing when, where, or why the account in question may be transferred to another debt collector. Likewise, even in the absence of current efforts to collect, she has no way of knowing when or where any other company may appear and demand payment on this bogus account.

107. Similarly, Ms. Donahue has no way of knowing whether she will continue to be employed or have the need for credit, either as a matter of convenience or as a matter of necessity (as by medical need).

108. To the extent that potential creditors, employers, insurers, and other businesses rely on consumer reports, the potential for harm from the account is great.

109. None of the Defendants have brought suit on this bogus account.

110. In the absence of an affirmative suit in which Ms. Donahue could obtain an adjudication of her rights, the only conceivable means by which Ms. Donahue can obtain proof that she does not owe this debt is through a declaration of her rights by this Court in relation to this account, as against all the known parties of interest.

111. Because Ms. Donahue cannot prevent the further transfer, sale, collection or reporting of the account, a declaration that she does not lawfully owe this debt is the sole means by which she can effectively avert further harm to her reputation, employment opportunities and

ability to secure credit.

112. A declaratory judgment is necessary for Ms. Donahue to clarify and settle the legal relations at issue concerning this bogus account, and provide relief from the Damoclean uncertainty which arises from this controversy.

113. Ms. Donahue requests that this Court declare her rights against SquareTwo and CACH.

114. Declaratory relief is available to litigants under the Declaratory Judgment Act, 28 U.S.C. § 2201 and F.R.Civ.P. 57.

115. Likewise, such relief is also available under Michigan common law, Michigan statute, and the Michigan Court MCR 2.605.

## **Demand For Judgment for Relief**

116. *Accordingly, Ms. Donahue requests that the Court grant:*

   a. *Equitable relief under statute and common law, in the form of a declaration that the amount sought by Defendants is not actually owed and an injunction prohibiting further collection of those amounts.*

   b. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

   c. *Statutory damages.*

   d. *Treble damages.*

   e. *Statutory costs and attorney fees.*

                      Respectfully Submitted,

                      By:  s/ Julie A. Petrik
                      Julie A. Petrik (P47131)
                      LYNGKLIP & ASSOCIATES
                      CONSUMER LAW CENTER, PLC
                      Attorney For Mary Donahue
                      24500 Northwestern Highway, Ste. 206
                      Southfield, MI 48075
                      (248) 208-8864
                      Julie@MichiganConsumerLaw.com

Dated: November 12, 2012